The case of the afternoon is Entler Excavating v. Horve Developers for the appellant, Mr. Zachary, for the appellee, Mr. Moss. You may proceed. Thank you. May it please the court. Good afternoon. My name is James Zachary. I'm with the firm of Willoughby and Zachary and Decatur. I represent Entler Excavating, the plaintiff appellant, in this action to foreclose a sub or sub-subcontractor's mechanics lien. We're here because the court dismissed the complaint on a 2-619 motion filed by the defendant owner, Horve. Frankly, it's our position that if the court's reasoning is taken to its logical conclusion, an owner can insulate himself from subcontractor's lien very simply by inserting in a provision in his contract that he will only pay a certain amount of money and no more unless he agrees in writing. At the end, he pays that to a general contractor and that would insulate him from any subcontractor's claims. We do not believe that's the law. It's not right. There may be two different propositions, whether it's the law or whether it's right. It's neither. But there are two propositions. I concede that. It's nice when they align. It is. Briefly, the facts are that the defendant, Horve, has been developing three subdivisions just outside of Forsyth, Illinois in Macon County, Greyhawk 1 and 2. As part of that development, he retained Hutchins Bulldozing as a general contractor to put in the streets and the sewers and a bridge. Hutchins retained Egyptian Concrete to build the bridge. Egyptian botched the job. Then Horve and the village of Forsyth... Who was involved in that contract? Horve, Hutchins, Egyptian. Egyptian was a subcontractor under Hutchins to build the bridge. Egyptian botched the job and then Horve, the village, and Egyptian entered into an agreement, and I'll talk about it later, whereby Egyptian agreed to rehabilitate the bridge at no additional cost to Horve. Egyptian then hired my clients, Entlers, to build the bridge, which they did. Shortly before they finished the job, Horve paid Hutchins, who paid Egyptian, who did not pay him. Within 90 days, we filed our statement for mechanics lien. We served Horve with that. We eventually filed suit. The 2-6-19 motion was filed and allowed. And on the basis that under Section 21 of the Act, Horve cannot be compelled to pay more than he agreed to pay under his contract. The problem with the reasoning, as I see it, is that Section 21 would contemplate that the owner follows the other provisions of the Act. Meaning, before he pays a general contractor, he obtains a sworn statement as to the status of subcontractors, who's been paid, who's owed money, either pays them, obtain lien waivers, or whatever. In this case, it's uncontroverted that Horve did neither. He simply paid Hutchins, Hutchins paid Egyptian, and Entler didn't get paid. Entler has complied with the Mechanics Lien Act, there's no dispute as to that. Horve did not comply, and yet Horve has his bridge, which Entler put in, and Entler didn't get paid. We believe that the Court's reasoning that Section 21 somehow precludes or prevents Horve from complying with the Act is simply wrong, and that it should be reversed and the cause sent back for further proceedings. There was another basis for the motion that was not ruled on by the Court. There are some older cases, and newer cases, that hold that work for egress and ingress into subdivisions is not lienable. That wasn't ruled on. I questioned whether I should raise it, but my experience is this Court has a way of determining what it feels is important, so I felt I needed to mention it. I addressed it in the brief. Simply, the cases are in the factual context of attempting to assert a lien on an individual lot and or property owner, and the Courts have held that for that, the work in the street has to be associated with the project on that lot. That's not what we're doing here. We're attempting to put a lien on the developer's interest in the property as a whole. We have not joined any individual owners or attempted to enforce this or apportion it among the owners. So I don't think those cases are appropriate. I think they're distinguishable. What I have to say, if the Court has any questions, I'll attempt to answer. What about the trial court stated that the contract where you were working as a subcontractor was a contract under which Horvay said, I don't owe anybody anything. Well, very simple. That's essentially the finding the Court made. And that contract does say that, but my client wasn't a party to that contract. And again, we're getting back to my initial and overall point. If the owner can defeat subcontractor's liens under these circumstances, the owner can defeat any subcontractor's lien by simply putting in a provision that this is all I have to pay and paying it. Under the judge's ruling, it didn't matter what Entler did. Entler, under no circumstances, can be entitled to a subcontractor's mechanics lien because of the contract. And that's wrong. And the only person that your client contracted with was Egyptian? Correct. And Egyptian's the culprit here. They're the ones who didn't pay. They got paid and they crossed the Macon County line and haven't been seen since. They actually were put into receivership in federal court in St. Louis, so it turned out to be a dead end when Mr. Moss and I looked at that. Are you indicating Section 5 was not complied with? Not by Horvath. It was by Entler. Entler complied with all the provisions. Horvath did not obtain a sworn statement from Hutchins or from Egyptian or anybody else and did not obtain a lien waiver from Entler. I think we have no further questions. Thank you. My name is Tom Moss. I'm an attorney from Decatur, Illinois and represent Horvath developers in this matter. I'd like to address Mr. Zachary's contention that the owner can defeat any subcontractor's lien by merely putting a clause in the contract that the improvements are going to cost so much and then paying them out. Section 21 provides that the owner, in this case Horvath, is not required to pay any more than they agreed to pay under the contract unless there's a showing that there was fraudulent intent to defraud a subcontractor. So Mr. Zachary's, I think, theory that you can just put a number in there and then the subcontractor has no recourse is not the case, but the only exception in Section 21 of the Mechanics Lien Act is if it was done to defraud the subcontractor. It's basically a game that the owner and his contractor play. I don't think there's any allegation in this case that that's happened here. Well, not by the owner, perhaps by the general who paid Egyptian rather than the people who actually did the work correctly. Here's where I think it gets a little confusing. I don't know that there are parties to squabble y'all are having, but it would seem to me that if you're a general contractor has some responsibilities under the Mechanics Lien Act as well, and you've got a situation where Egyptian did the job but didn't do it, and you've got the Entlers who did do the job, why would the general pay Egyptian rather than Entler? I think because there are separate contracts here, and I think that's where it gets a little confusing in this case. There's a contract, the original contract, which goes back to 07, was between Horvey and Hutchins as the general who then hired Egyptian. And then later on there's a problem with the bridge. So then there's another contract entered into between the village of Forsyth, Horvey, and Egyptian to rehabilitate the bridge. The payments that I think Mr. Zachary is talking about, you have to decide what contract those were made under, because Hutchins' contract with Horvey from 07 included more than just the bridge. It's got grading, it's got roadways, paving that Egyptian was doing. So payments to Egyptian from Hutchins, not necessarily payments for rehabilitating the bridge. There's two separate contracts. Egyptian is doing some work over here that's good and beneficial and deserves to be paid for. If you look at the lien waivers that Egyptian gave after their contract with Entler, you'll see that there's one in September 2008. And by the way, the Entler-Egyptian contract was August of 2008. But the payments that were made September 2008 shows on the lien waiver that it's for drainage and crossing work. There's one in November, same thing, drainage and crossing work. And there's one in December of 2008 for excavation and grading. So those payments are made on a different contract. So yes, the general was paid. In fact, the checks from Horvey were joint to Hutchins and Egyptian. And then they split it up however they split it up. But that, and I think it's shown on the lien waivers, was for work other than the rehabilitation of the bridge, which is the other contract that was going to cost the village at Horvey nothing in 2008 between the village, Horvey, and Egyptian. And if you look at the contract between Egyptian and Entler for the rehabilitation work, you'll see that the contractor is shown as Egyptian. The subcontractor is shown as Entler. And the owner is shown as Hutchins on behalf of the village of Forsyth. So I don't think there's any question they understood this as a different contract and not the Hutchins-Horvey contract from 07. This is under the village-Horvey-Egyptian contract of 08. So how does Entler get paid? Supposed to be paid by Egyptian. Egyptian wasn't good for it is the bottom line. Well, who else was a party to the contract? I think those are the only two parties to the contract. Horvey's not even named in the Egyptian-Entler contract. Village of Forsyth? I can't speak for them. Were they a party? What shows as owner, it shows Hutchins on behalf of village of Forsyth. Whatever that means, I don't know. But it's clear to me that everybody understood in that second contract that Egyptian was taking this on. And Egyptian, under its contract with the village of Horvey, was not entitled to any payment. And then for that reason, it's our position that the Section 5 affidavit issue becomes moot because there wasn't any money to do. You only have to get a Section 5 affidavit if you're paying money on the contract. And there wasn't any money to be paid, so the Section 5 affidavit is not required. That's our position, I hope, in a nutshell. If you have any questions, I'll try to... It's a convoluted situation. You know, there's kind of an old-fashioned maxim that, you know, whether there's a wrong, there should be a remedy somewhere along the line. And, you know, you're left with kind of an unsatisfactory feeling, you know, based on the analysis you provide, because obviously Mr. Zachary's folks really took it on the chin and threw no fault of their own. I'm not arguing that, but I think, as I'm sure you've seen and I know in mechanics lien law, because it's all statutory, this happens. And there's case after case where it's happened. Just because of the act is strictly construed. And we think under strict construction of the act and the sections that we've talked about that, unfortunately, Entler is the odd man out. Well, unless there's some other contracting party that can go against outside mechanics lien law. Yeah. On quantum narrowing. Nothing else. Thank you. Thank you. I want to address this issue of separate contracts. I'd ask the court to look at what was agreed to between Horvey, the village, and Egyptian. Egyptian agreed to rehabilitate the bridge. They were already under a contractual obligation to build a bridge in a reasonably good workmanlike manner under their agreement with Hutchins, which Horvey was a third party beneficiary of. So Egyptian didn't agree to do anything that they weren't already obligated to do. Horvey agreed to pay for it when it was completed, which he was already under a contractual obligation to do. This new contract is basically a sham. Little consideration, if any. The parties agreed to do what they were already under obligation to do. So I think that's a bit of a red herring. Hutchins is a party to this, except we haven't gotten to them yet because the case was dismissed on a 2-6-19 motion. I'm confident that when it goes back and we start up again, Mr. Moss's next move will be to sue Hutchins on behalf of Horvey for indemnification for not seeing to it that the subs were there. We just haven't got that far procedurally. If not the village of Forsyth, who demanded changes to the bridge. I'm sorry? It's the village that demanded changes to the bridge, wasn't it? Actually, the way I understand it is that Egyptian, after doing their testing, determined that the bridge was not adequate and notified everybody else. And so then we have this situation. It's true, people do get stuck under the Mechanics' Lien Act. But I think the cases that we've cited in the brief are clear that the subcontractor complies with the act and the owner pays without protecting himself under the act. The owner can be required to pay more than his original contract. I think that's what you need. Thank you, counsel. We'll take the matter under advice.